## Wiley's Appeal.

What things are assets in the hands of an administrator.

Tenant from year to year of a tavern: on his decease his administrator takes possession: he is chargeable with the leasehold interest and good-will as assets, at the price offered him for them by others and refused.

APPEAL from the decree of the Orphans' Court of *Philadelphia* county.

*M. W. Ash,* for the appellant.

The principle of law, to wit, that money obtained by an administrator for the good-will of a public house is assets in the hands of such administrator, need not be controverted, as in this case no money was received; and in justice and good faith no money could have been received for the good-will of the premises, as the administrator could have given no title to them; and if he had actually received the money, the same could have been recovered back again from him, as the consideration would have entirely failed, as no interest whatever could have been imparted by the administrator to the purchaser.

The charge of $325 against the administrator, when it appears that he did not receive a cent for the good-will, and without the intervention of some tribunal to ascertain the fact of his maladministration, and the amount of damages which he ought to pay therefor if anything, was illegal. The administrator had a right to a trial by jury to ascertain whether he was liable and to what extent. It was purely a question of damages; of unliquidated damages; and not of an ascertained sum of money actually received by the administrator; and it is fair to presume that when the appraisers made their appraisement they considered the good-will as valueless, as the bar and fixtures were valued by them, and were so intimately connected with the house in which they were located, that it could not have been overlooked by them. At all events, the administrator was entitled to all the advantage which such an argument before a jury would have been worth. This charge against the administrator is founded upon the *mala fides* of the administrator; and the suit against him would have been an action on the case, arising *ex delicto* and not *ex contractu*; which gives him an additional claim for a trial by a jury. Besides which, the administrator would have rendered himself liable to an action for damages by the landlord of the premises, if he had put another person therein as a tenant without his permission. Finally, it was not the duty of the administrator to increase the assets of the

estate of his decedent by any act of speculation, or by the doing of anything which rigid justice and good conscience would not dictate or sanction.

*H. M. Watts,* for the appellee.

The appellant is charged in his account with the value of a certain lease for years, together with bar fixtures, the property of the decedent. It was proved that he was offered for the same the sum of $325, the amount charged; that he declined the offer, and that he took possession and enjoyed the same for his own benefit.

A lease for years is legal assets in the hands of executors. *Matthews on Executors,* (9 *Law Lib.* 144); *Ram on Assets,* (8 *Ibid.* 245, 478); 1 *Ves. Jun.* 295; 1 *Chan. Rep.* 170. An administrator who ships goods of the intestate on a trading voyage is liable for any loss sustained. *Callaghan* v. *Hall,* (1 *Serg. & Rawle* 241). Where an administrator of a tradesman carried on the business with the stock in trade of the intestate, creditors had a right to consider him as taking the stock at the appraisement. *Wood's Estate,* (1 *Ashm.* 314).

The opinion of the Court was delivered by

KENNEDY, J.—William Wiley, the intestate, was in possession of a house and lot of ground situate in the city or county of Philadelphia at the time of his death, which he had held and occupied for some time previously as a tavern and public house, as a tenant from year to year under a verbal lease from the owner thereof. He had made repairs and improvements upon the house, and among other things done in that way he had put up a tavern bar, the cost of all which amounted to $300 and upwards. The administrator took possession of the house and lot immediately after the death of the intestate, as also of the other personal estate belonging to the intestate. He made an inventory and procured an appraisement to be made thereof. The bar put up for the use of the tavern was appraised at $40, but no account made or notice taken of the leasehold interest in the tavern. The administrator, however, kept possession of and used it for his own benefit, although he had several offers for the purchase of it by different persons, one as high as $325, all which he refused. In his administration account he charged himself with the $40, at which sum the tavern bar was appraised, but with nothing beyond this for or on account of the tavern or interest which the intestate had in the house and lot of ground at the time of his death. The account was therefore objected to, and an auditor appointed by the Orphan's Court to inquire into the matter and make report of the same to the court. The auditor, upon investigation, found the facts to be substantially as stated above, and made report thereof to the court, charging the administrator with $325, the sum he was offered for the good-will and interest which the intestate had

v *

in the house and tavern-stand at the time of his death, which came to the possession of the administrator as assets of the estate, and which the latter ought to have sold and converted into money, but instead of doing so retained it in his own possession and used the same for his own purposes and advantage. The Orphans' Court approved and confirmed this charge, to which the administrator excepted, and has appealed to this court in hopes of being relieved from it.

That a tenancy from year to year is considered assets, and as such devolves to the executor or administrator, cannot be doubted. 1 *Black. Rep.* 596; 3 *Term Rep.* 13; 6 *Ibid.* 295; *Ram on Assets* 143–4–5, and the cases there referred to. A lease belonging to an intestate, which he had pledged to a creditor by assigning it to him, was held by Lord Chief Justice Abbott to be assets in the hands of the administratrix after the death of the intestate, in a suit brought by the creditor against the administratrix to recover his debt. The chief justice said the legal estate was in the administratrix, and if she had done what she was desired to do, the lease might have been sold. *Vincent* v. *Sharp*, (2 *Stark. Rep.* 446). So money received by an executrix for the good-will of a public house was considered assets in her hands. *Worral* v. *Hand*, (1 *Peake's Rep.* 74). Lord Kenyon, before whom the cause was tried, said it was assets in her hands, though she was only tenant at will after the death of the testator; and in a Court of Chancery it was the daily practice to consider all beneficial interests, such as renewable leases and the like, assets, and to charge the representative with the money arising from them. So an executor will be charged with the difference between the annual value of the land held under lease and the rent payable for it, where the real annual value exceeds the annual rent. 11 *Vin. Abr.*, *pl.* 42, *p.* 230; *Cro. Eliz.* 712. An executor or administrator being a mere fiduciary, is bound not only to perform his duty with fidelity but with proper skill and reasonable diligence, so as to promote the interests of those interested in the estate of the deceased. It has been argued in this case that the administrator was not chargeable with the $325, as he never sold the tavern-house nor received any money on account thereof. But unquestionably it was his duty to have sold, and more especially when he was offered, if he would sell and deliver possession, all that he has been charged on account of it. He will not be allowed to make profit or gain out of it by retaining and occupying it for his own purposes, more than he would be allowed to retain and use the money for his own purposes in case he had sold the property for the price offered. In short, he will not be permitted to make gain or profit out of the estate in any way whatever for himself. See *Petit* v. *Storee*, (4 *Vez.* 620); *Newton* v. *Bennet*, (1 *Bro. Ch. Ca.* 359, 362), and the cases there cited in *Parker's Ed.*, (*Boston* 1844). Hence if he buy debts against the estate for less than the true amounts

thereof respectively, he will not be allowed to gain or profit by it. *Ex Parte James* 346, 347; *Hall* v. *Hallet,* (1 *Cox* 135). For the same reason if he be offered a greater price for any portion or article belonging to the estate than it has been appraised at, but refuses to accept the same, and instead thereof converts the article to his own use, he ought to be charged with the highest price that he has been offered for it. Every principle of good faith and honesty, as also of sound policy, requires that it should be so. See *Wentworth's Ex'r.,* 14*th Ed.,* 302; *Ram on Assets* 497; *Jenkins* v. *Plombe,* (6 *Mod.* 181–2).

Decree of the Orphans' Court affirmed.