# Locher's Estate (No. 2).

*Executors and administrators—Misconduct—Surcharge—Failure to realize on bonds.*

Where the administrators of a decedent's estate have an opportunity to realize cash for bonds owned by the estate, but instead of doing so exchange the bonds for stock of a corporation, which proves to be practically worthless, the administrators are properly surcharged with the loss.

Where the administrator of an insolvent estate pays out of his own funds a note of the decedent, and redeems stock pledged as collateral for the note, which stock the administrator knows to be worthless, and thereafter the administrator repays himself from the funds of the estate, he is properly surcharged with the wrongful payment of the note.

A finding by the auditing judge that an administrator could have sold stock at a particular price, if he had made proper efforts, is a finding of fact, and as such is entitled to as much weight as the verdict of a jury, and will be set aside only for manifest error.

*Executors and administrators—Commissions—Estoppel.*

Where administrators are guilty of gross negligence in dealing with the assets of the estate, sacrifice the securities by sales under disadvantageous circumstances, and fail to deposit large sums of money in bank, they are properly deprived of all commissions or compensation for services.

Argued May 21, 1907.    Appeal, No. 372, Jan. T., 1906, by David R. Locher and Lila Reno Locher, from decree of O. C. Lancaster Co., Feb. T., 1905, No. 20, dismissing exceptions to adjudication in Estate of Charles H. Locher, deceased.    Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ.    Affirmed.

Exceptions to adjudication.    Before SMITH, P. J.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions to adjudication.

*Reynolds D. Brown*, of *Burr, Brown & Lloyd*, with him *W. U. Hensel* and *W. R. Brinton*, for appellant.—The admin-

istrators or trustees ought not to be surcharged except when they are guilty of either fraud or supine negligence equivalent to fraud : Springer's Est., 51 Pa. 342 ; Leslie's App., 63 Pa. 355 ; Dundas's App., 64 Pa. 325 ; Heineman's App., 92 Pa. 95 ; Semple's Est., 189 Pa. 385 ; Waddell's Est., 196 Pa. 294.

The mere fact of a surcharge is not, in itself, sufficient to justify the forfeiture of commissions : Price's Est., 81 Pa. 263 ; Palmer's Est., 2 Del. County Rep. 180.

In the absence of fraud or bad faith, commissions will not be forfeited for less than gross negligence : Fross's App., 105 Pa. 258 ; McManus's Est., 14 Pa. C. C. R. 379 ; Merkel's Est., 131 Pa. 584 ; Bechtel's App., 7 Pa. Superior Ct. 451.

*William H. Keller,* with him *John E. Malone* and *John A. Coyle,* for appellee.—The finding of an auditor will not be disturbed on an appeal except for flagrant error : McConnell's App., 97 Pa. 31 ; Fahnestock's App., 104 Pa. 46 ; Sawtelle's App., 84 Pa. 306 ; Lewis's App., 127 Pa. 127.

Examples of actions on the part of accountants such as warrant surcharging, under the decisions of this court, are found in : Leslie's Appeal, 63 Pa. 355 ; Gilbert's Appeal, 78 Pa. 266 ; Chambersburg Saving Fund Assn.'s App., 76 Pa. 303 ; Semple's Est., 189 Pa. 385.

Commissions were properly disallowed : Moore's App., 10 Pa. 435 ; Price's Estate, 81 Pa. 263 ; Swartswalter's Account, 4 Watts, 77 ; Jackson's Estate, 18 W. N. C. 568 ; Hoffer's Estate, 156 Pa. 473.

OPINION BY MR. JUSTICE POTTER, June 25, 1907 :

This is an appeal by the administrators of Charles H. Locher, deceased, from the decree of the orphans' court dismissing exceptions filed by them to the adjudication of their account, in which they were surcharged to the extent of $26,007.15. The first assignment of error complains of a surcharge of $8,145.75, being the amount unaccounted for, of the value of certain bonds of the Eastern Milling and Export Company, which were owned by the decedent in his lifetime, and by him loaned to his son, David R. Locher, one of the administrators. The bonds were of the par value of $25,000, but their actual value at the time of decedent's death, as fixed by the

dividend paid by the receiver of the company, was a little over thirty-two per cent. of their par value, or $8,153.75.

The evidence does not show any definite contract made by decedent with reference to the disposition of these bonds. It does appear that D. R. Locher used these bonds belonging to the estate, in settlement of a purchase which he made of certain of the mill properties formerly belonging to the Eastern Milling and Export Company. These bonds were assets of the estate in the hands of the administrators. It was their plain duty to convert them into cash, and this they could have done by collecting the dividend paid by the receiver. Instead of doing this, and without permission from the court, and without notice to the creditors, they entered into a transaction by which the bonds were exchanged for stock of the Philadephia Flour. Milling Company, which proved to be practically worthless. Under these circumstances, we have no doubt whatever that the administrators are liable for the value of the securities thus misapplied by them. There was nothing to show that the estate was interested in or could in any way have benefited by the transaction of D. R. Locher. The sound principle is stated in Robinett's Appeal, 36 Pa. 174, where Justice Woodward said (p. 189): " The general rule of equity as stated by Judge Story in Oliver v. Piatt, 44 U. S. 333, is that the gain made by the trustee by a wrongful application of the trust fund shall go to the cestui que trust, and all the losses shall be borne by the trustee. This principle was substantially recognized and applied in Callaghan v. Hall, 1 S. & R. 241; Wiley's Appeal, 8 W. & S. 244, and in Emeret's Estate, 2 Pars. Eq. Cas. 195." And after discussing the authorities the rule stated is expressly adopted as the law of Pennsylvania. And in Norris's Appeal, 71 Pa. 106, Judge Paxson said (p. 125) in an opinion approved by this court: " It is a well-settled rule that where a trustee speculates with the trust funds he may be held to profits or interest, at the option of the cestui que trust. Profits, if the investment has been successful, and interest if it has been disastrous. In no event will the trustee be allowed to make a profit out of the trust fund. The law holds out no inducements to trustees so to misapply the estate. He may lose, but he cannot make by so doing." The first assignment of error is overruled.

The question raised by the second assignment of error relates to a surcharge of $5,143.90, being the difference between the price of $50.00 a share realized by the administrators on the sale of the stock of the Lancaster Electric Light, Heat and Power Company, and the price of $75.00 a share which it was held by the auditing judge should have been obtained for this stock. The interest of the decedent in the company was ascertained to be twenty-six unincumbered shares and a one-third interest in 685 shares which were pledged to the City Trust Company as collateral for a loan. All of this stock was sold at private sale by the administrators at $50.00 a share, its par value. The auditing judge finds as a matter of fact that if the administrators had made proper efforts, they could have sold the stock for at least $75.00 per share, and he surcharged them with the difference between that figure and the price which they actually obtained.

Under the familiar rule that the finding of an auditing judge, or an auditor, upon a question of fact is entitled to as much weight as the verdict of a jury, and will be set aside only for manifest error, we see no reason whatever for interference with this finding.

The third assignment complains of a surcharge of $9,017.50, being the amount paid to the Union Trust Company of Philadelphia in settlement of a note of the decedent. The note was secured by stock of the City Saving Fund and Trust Company of Lancaster, of which decedent was president at the date of his death, October 13, 1904. His son, David R. Locher, one of the accountants, succeeded him as president of the company. It appears from the evidence that on or about January 6, 1905, the state bank examiner, after an examination of the affairs of the company, informed Mr. Locher, that the surplus of the trust company was entirely wiped out, and its capital impaired, if not also wiped out; and that in view of the loans to himself and to other family connections and interests of the deceased president, he would have to protect the bank. Mr. Locher replied that he thought he could raise $100,000 within a week, without disturbing the assets of the institution, and the bank examiner allowed him a week to negotiate along that line. His efforts were unsuccessful, and on January 21, the trust company closed its doors, and a receiver was ap-

appointed. Its stock proved to be worthless. Meanwhile, on January 14, D. R. Locher paid to the Union Trust Company the amount of the decedent's note and interest, and redeemed the stock of the City Saving Fund and Trust Company, which had been pledged as collateral. From the standpoint of the interest of the estate, no reason appears for this action. Payment of this note was made by Mr. Locher not with money of the estate, but with his own funds, which he afterwards replaced by payment to himself at various times from the funds of the estate. The auditing judge 'surcharged the accountants with the full amount of the note thus paid, but allowed them a dividend as creditors of the estate, the dividend so allowed being $805.91.

Where the administrator of an insolvent estate pays a note of the decedent in full, he is properly to be surcharged with the amount of the wrongful payment. If the collateral attached to the note had been worth more than the amount loaned on its security to the decedent, it would have been the duty of the administrators to redeem the collateral for the purpose of obtaining the surplus value; but in the present case, Mr. Locher, the active accountant, was president of the trust company whose stock constituted the collateral, and he must be presumed to have had knowledge of its entire lack of value. Only a few days before the note was paid, he had been informed by the bank examiner that the surplus fund of the trust company was gone, and its capital greatly impaired, and at the time he was vainly endeavoring to raise funds to make good the impairment. A week later, the trust company went into the hands of a receiver. There was certainly no reason apparent why in the interest of the estate, this note should have been paid in full, secured as it was only by the stock of a failing corporation. In addition is the fact that the note was not paid with the money of the estate, but with accountant's own money, which was repaid after the failure of the trust company from the funds of the estate. We think that accountants were properly surcharged in this respect.

In the fourth assignment of error, complaint is made of the refusal of commissions. The accountants claim $3,700 as compensation, and the court surcharges them with the full amount, holding that by reason of mismanagement of the estate all

right to compensation had been forfeited. The reasons for so holding are set forth at length in the opinion dismissing the exceptions to the adjudication, and are summed up by the statement that "The conduct of these administrators does not exhibit that care, prudence and good faith which the law demands." The facts recited in the opinion are sufficient to justify the action of the court. As Justice DEAN said, in Hart's Estate, 203 Pa. 496 (p. 501): "Taking the facts as the court states them, and as the evidence developed them, it may well say, 'Enough has been shown to warrant the disallowance of all compensation;' in fact, it warranted no other than a disallowance of all compensation. The personal regret for the trustee's conduct should not have moved the court to shrink from the judicial decree which logically followed the finding of facts—one refusing him all compensation. In the real sense of the word, it is not the infliction of a 'penalty,' for there is another court better adapted both in its procedure and judgment to that end; in the orphans' court, it is simply a refusal to reward him as for doing well that which he has done ill. That he did not intentionally wrong his cestui que trust is immaterial on the question of compensation; if they have suffered by his neglect and mismanagement, he has no claim in law or equity to be paid for that sort of management."

As far back as Stehman's Appeal, 5 Pa. 413, this court said: "Compensation to trustees is allowed in this and our sister states, as the reward of faithful execution of the trust confided. Integrity, industry, intelligence and enlightened activity in the trustee are the qualities which command reward. To compensate sloth, ignorance, reckless confusion and procrastinating delay, by which the interests of the cestui que trust are impaired, instead of being promoted, would be to prevent the very object our system has in view in allowing compensation to trustees, by offering a premium to incapacity or dishonesty."

In the present case the manner in which the securities of the estate were dealt with by the accountants, and the lack of prudence displayed in exposing them to sale under disadvantageous circumstances; the apparent disregard, or the sacrifice in some instances, of the interests of the estate; the careless way in which the cash was kept and the failure to deposit large sums in bank; all these matters taken together as indicating

the character of the services rendered, seem to justify the action of the court below in refusing to allow commissions to the accountants.

The appeal is dismissed at the cost of appellants, and the decree of the orphans' court is affirmed.