# Hermann's Estate.

*Executors and administrators—Inventory—Ownership of property—Jurisdiction of orphans' court—Findings of fact.*

1. Presumably every item of property an executor has included in his inventory belongs to the estate, and for all such he must account. The inventory is an admission on his part that the property embraced in it came into his possession as a legal representative of the testator. If at testator's death the property is shown to have been in his possession, or if for any other reason it is presumably his, a mere denial of ownership unsupported, will not oust the court of its jurisdiction, but the court may proceed with the investigation so far as to inform itself whether the denial is made in good faith and a substantial dispute exists.

2. Where a son as the executor of his father includes in the inventory the stock and merchandise of a store, but in his account, and at the audit, claims that he was a partner in the merchandise and the stock and owned half of it, the orphans' court has jurisdiction to determine the question of ownership; and if it finds as a fact from the admissions of the son and other competent testimony, that the son was a partner in the profits only, and not in the ownership of the stock and merchandise, such finding will not be reversed by the Supreme Court.

3. Where a son who was the executor of his father, and who had an interest in the profits of his father's business renews a current note to his father two weeks after the latter's death, and the makers of the note eight months after the testator's death fail, resulting in a loss on the note, the son cannot be surcharged with the loss, if it appears that the

note was the last of a long series of renewals by the testator himself, that at the time it was renewed the makers were in the best credit, were apparently solvent, and the accountant had no reason to anticipate their failure.

*Executors and administrators—Misconduct—Compensation—Disallowance of commissions.*

4. An executor's commissions are properly disallowed where it appears that the accountant took upon himself the exclusive management of the estate, denying to his coexecutor the right of participation; that he managed it in total disregard of the most ordinary business methods; that his exhibits were untrustworthy upon their face, several of them being absolutely incorrect, and others which he should have produced he asserted were lost; that he claimed as his own property that which undoubtedly belonged to the estate; and that after several years he left the estate in such confusion and uncertainty, that only the most thorough and expert examination could reveal the true situation.

Argued Oct. 29, 1909. Appeal, No. 141, Oct. T., 1909, by John A. Hermann, Jr., Executor, from decree of O. C. Allegheny Co., March T., 1907, No. 106, dismissing exceptions to adjudication in Estate of John A. Hermann, deceased. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Modified and affirmed.

Exceptions to adjudication. Before OVER, J.
The opinion of the Supreme Court states the case.

*Error assigned* was in dismissing exceptions to adjudication.

*Charles W. Dahlinger*, with him *J. M. Stoner*, for appellant.—The surcharge for loss on Groetzinger note was erroneous: Keller's App., 8 Pa. 288; McNair's App., 4 Rawle, 148; Neff's App., 57 Pa. 91; Moyer's Est., 1 Pears. 407; Maples v. Hicks, Brightly N. P. 56; Overholt v. First Nat. Bank of Mt. Pleasant, 82 Pa. 490; Barnhart v. Seitz, 27 Pitts. L. J. 239.

In the absence of fraud or unfairness, an administrator is entitled to reasonable commissions for his services, although he may have been negligent in the performance of them: McManus's Est., 3 Pa. Dist. Rep. 183; Woodward's Est., 2 Chest. County Reps. 159; Robison's Est., 5 Phila. 99; Williamson's

Est., 2 Pa. C. C. Rep. 221; Miller's App., 8 Atl. Repr. 864; Heft's App., 19 W. N. C. 302; Hay's Est., 32 Pitts. L. J. 375; Bierman's Est., 5 York, 57; Norris's App., 71 Pa. 106.

*J. L. Ritchey,* with him *W. H. S. Thomson* and *Frank Thomson,* for appellees.—The court was justified surcharging the accountant for the loss on the Groetzinger note: Charlton's App., 34 Pa. 473; Johnston's Est., 9 W. & S. 107; Baer's App., 127 Pa. 360; Stewart's App., 110 Pa. 410; Reese's App., 116 Pa. 272; Stewart's Est., 137 Pa. 175.

Where there has been gross negligence resulting in peril, expense and loss to the estate, or where fraud or bad faith are shown, commissions will not be allowed: Dickson's Est., 21 Pitts. L. J. 109; Swartzwalter's Account, 4 Watts, 77; Berryhill's App., 35 Pa. 245; Clauser's Est., 84 Pa. 51; Milligan's App., 97 Pa. 525.

Opinion by Mr. Justice Stewart, January 3, 1910:

The assignments of error bring to our attention many questions of fact, but very few of law. The presumption in favor of the correctness of the court's findings, is much strengthened in this case by the fact that the audit extended over a whole year, the hearing being interrupted only from time to time as it became necessary to afford counsel on either side opportunity to examine the many different exhibits offered in evidence. The record is voluminous of course, and the lengthy and exhaustive opinion of the learned judge who presided, covering more than sixty pages, shows that the case in all its details had his fullest consideration. Nevertheless, certain of his findings being challenged, the law imposes on us the duty of reviewing the evidence, not, however, to determine whether in our judgment they are sustained by a preponderance of the evidence, but whether the evidence left the facts disputable. And this we have tried to do, with the result that, after a somewhat prolonged and careful investigation, we are entirely convinced that in every instance, except that hereinafter referred to, the finding rests on sufficient evidence. The evidence with respect to each disputed fact was sufficient to submit to a jury,

and more. It is a settled rule that this court will not disturb the findings of the learned judge below where this is the case. It is emphatically true here, and since we sustain the findings of fact, separate review of them is unnecessary. The case however presented several questions of mixed law and fact, which require separate consideration. Accountant was the executor of his father's will. The inventory and appraisement filed under his direct supervision included among the assets of the estate this item, "Merchandise, stock in business, 82 Ohio street, $2,500." In his account, and on the hearing, accountant claimed that this item represented a one-half interest in the merchandise and stock of a business which had been conducted by his father and himself as equal partners. The partnership, though not appearing in the inventory, was not denied. Exceptants, however, offered much testimony including admissions of accountant, himself, to the effect that the partnership did not embrace the merchandise and stock in business, but was limited to profits, the father being the sole and exclusive owner of the stock. The learned judge found, as we think from a clear preponderance of the evidence, that the partnership was confined to profits, and accordingly surcharged the accountant with the difference between the sum accounted for and what he determined as the full value of the merchandise and stock. The jurisdiction of the orphans' court to determine the question here raised is challenged. It is to be noted that the partnership was first asserted by the accountant, and that he voluntarily made it the subject of accounting. That the orphans' court has jurisdiction in such a case as this abundantly appears in Brown's App., 89 Pa. 139. Here the jurisdiction is more obvious than in the case referred to, since here none were interested in the partnership but the accountant and the testator. The question for the court to determine was simply what assets of the estate passed into the hands of the accountant. Admittedly the entire stock of merchandise and accounts passed into the hands of the accountant. If, as the court found, the stock belonged to the estate, accountant would be liable to surcharge for what had not been inventoried. In Cutler's Estate, decided at the present term, but not yet re-

ported, we held as follows: "Presumably every item of property an executor has included in his inventory belongs to the estate, and for all such he must account. The inventory is an admission on his part that the property embraced in it came into his possession as a legal representative of the testator. If at testator's death the property is shown to have been in his possession, or if for any other reason it is presumably his, a mere denial of ownership unsupported, will not oust the court of its jurisdiction, but the court may proceed with the investigation so far as to inform itself whether the denial is made in good faith and a substantial dispute exists." In that case the contested items had been omitted from the inventory. Here we start with the fact that the merchandise and stock constitute an item included in the inventory, without a suggestion that the item includes less than the whole, or that accountant individually had any claim to any of the stock as partner. What he brings into the estate by the inventory is the merchandise and stock; its estimated valuation is of no consequence in this particular inquiry. Afterwards, in accounting, he demands that he should be charged with nothing beyond the valuation fixed by the appraisers, because only a one-half interest was valued, he himself being the owner of the other half. Nothing in writing confirmatory of the accountant's claim was offered in evidence. Not only was there no written contract of partnership showing the terms on which accountant had been admitted as a partner in a business which had been long established, but the books and accounts of the firm furnished no basis whatever for his present claim. Against it were his own admissions, not simply as contained in the inventory, but admissions made to others that his interest was confined to profits, and that he owned no part of the merchandise or stock. The learned judge reached the conclusion that accountant's denial of the entire ownership of the stock by the testator was not made in good faith, and that the question between him and the estate on this branch of the case was not a disputable one. The evidence supported the finding as well as the surcharge made.

Among the inventoried assets of the estate was a note of J.

Groetzinger & Son for $12,000. This represented a loan made by the testator many years before his death to the firm of A. & J. Groetzinger. Some three or four years before his death, upon a change of the firm, the loan was continued to the new firm of J. Groetzinger & Son. On each renewal the note was for a year. Upon maturity of the note current at the time of testator's death accountant accepted a renewal for another year. Within eight months thereafter the makers failed, and a loss of $8,897 resulted to the estate. To make good the loss sustained to such of the distributees as demanded indemnification, the court surcharged accountant with $6,355.10, distributing this amount among five of the distributees. The finding of the court with respect to the renewal of the note is as follows: "There is no question that the firm's credit was good when the accountant renewed the $12,000 note, and it could then have been collected, but as the renewal was an investment not authorized by law, made without the consent of his coexecutor, or the legatees in remainder, he is prima facie liable for the amount lost on this note." This finding in our judgment is insufficient to warrant the surcharge against the accountant. It is not quite correct to say that this "was an investment not authorized by law." The original investment had been made by the testator, and the acceptance by the accountant of a note at the maturity of the old was nothing more than an extension of the time of payment. The note current at testator's death matured within two weeks thereafter. Accountant at once accepted a renewal of it for a year on payment of the accrued interest. Eight months thereafter, without warning, the makers became bankrupt. Up until that time their solvency had not been questioned. Banks with which they had for years been doing business were lending them large sums of money, and the testimony is cumulative that their financial standing was excellent. Suppose instead of accepting a renewal note the accountant had simply retained the original, and had failed to collect it before bankruptcy overtook the makers. Could it possibly be charged in such case that he was guilty of such supine negligence as would make him liable for the loss? The bankruptcy came when but

little more than half of the year of the administration had gone by; it came as suddenly and unexpectedly to the accountant as to the banks and other creditors of the bankrupts, with disastrous results to many others who had trusted in the financial soundness of the firm because of its public fame. The money due the estate was not required for the payment of debts, and as invested by the testator himself was bearing interest. There was nothing 'to require its immediate collection, and nothing to put the accountant on notice of any increase of risk. There is no suggestion of bad faith or dishonest purpose on the part of the accountant in connection with this renewal of the note. Clearly under such circumstances the mere failure to sue within eight months after testator's death would have been no sufficient ground for a surcharge. If this be so, and we think it too clear for dispute, how can the fact that a new note had been taken for a year be material? It is not shown to have contributed to the result in any way. Had failure to sue resulted from the acceptance of the note, the case might have been different; but so far as can be discovered from the evidence the two are wholly unrelated. The assignment of error which has regard to this surcharge is sustained.

The action of the court in disallowing accountant's claim for commissions, loses much of its apparent severity when the whole case is examined. We do not care to review it further than we have, nor is it necessary that we should. It clearly appears, and the court so finds, that the business of the estate was managed in total disregard of the most ordinary business rules and methods; that accountant took upon himself its exclusive management, denying to his coexecutor the right of participation; that his exhibits were untrustworthy upon their face, several of them being absolutely incorrect, and others which he should have produced he asserted were lost; that he claimed as his own property that which undoubtedly belonged to the estate; that he withheld from the account clearly identified assets of the estate, and, generally speaking, after several years of administration, he left the estate in such confusion and uncertainty, that only the most thorough and expert examination could reveal the true situ-

ation. Because of these most serious derelictions the learned judge concluded that he had not faithfully executed his trust, and in consequence had forfeited all right to his commission. In this we concur. We see no error in the case other than in the surcharge for the loss sustained on the Groetzinger note. The decree must be modified by striking therefrom whatever is surcharged on account of the loss on the Groetzinger note, and with this modification the decree is affirmed.