## Apple's Estate

*Charles W. Eaby,* for exceptants.

*Willis G. Kendig,* for accountant.

BURKHOLDER, P. J., December 1, 1937.—Lydia S. Apple died testate on December 29, 1935, leaving to survive her two children, Clara S. Phalm and Homer S. Apple. In her will she gave a general legacy of $3,500 to Clara S.

Phalm, provided for certain other specific bequests, and divided the residue equally between her two children. Letters testamentary were granted to Clara S. Phalm, the executrix named in the will.

At the time of her death testatrix was seized in her demesne as of fee in and to a certain piece of real estate situate in the Borough of Manheim, Lancaster County, Pa. In her will she ordered and directed her executrix to convert her entire estate, both real and personal, into cash, and for that purpose authorized her to sell the real estate at public or private sale for the best price obtainable and convey the same to the purchaser. In accordance with this authority the executrix advertised a public sale of said premises to be held on Tuesday, December 15, 1936. The advertisement appeared once a week for three weeks before the sale in the Manheim Sentinel and the Lancaster Law Review, and quarter-sheet posters were distributed to "every business place in Manheim . . . one tacked on the house".

Prior to the sale an arrangement was entered into between C. Raymond Geib, a notary public, residing in the Borough of Manheim, who acted on behalf of the executrix, and one Benjamin B. Kready, under the terms of which Mr. Kready was instructed to bid up to $2,900 for said premises as agent for executrix, to take title thereto in his own name and immediately to convey the same to executrix in her individual capacity. At the sale the highest bid offered by an outsider was from Mr. George Seabold, who resided near the premises. Before Mr. Seabold made this bid the auctioneer suspended the sale in order to permit him to go to his home for the purpose of consulting with his wife. After he returned he made a final bid of $2,850 for the property. Shortly thereafter, Mr. Kready, acting on behalf of executrix, bid $2,855 and the premises were stricken off to him.

Executrix executed and delivered a deed to him for the premises, reciting the consideration above named, which

deed was duly recorded in the recorder's office at Lancaster. At the same time she took a deed for said premises from him and his wife to herself individually. This deed was not recorded, and contained a notation in pencil in the handwriting of C. Raymond Geib, as follows: "Do not record this deed until after *account is filed* the audit."[1]

Executrix filed her account and charged herself with $2,850 as the proceeds of said sale. It is admitted that this amount was incorrect and should have been $2,855. Exceptions to this account were filed on behalf of Homer S. Apple, the son of testatrix, and at the audit extensive testimony was taken on behalf of exceptant, as well as on behalf of the accountant.

In the adjudication, this court surcharged executrix with the sum of $5, being the difference between the bid and the amount accounted for, and the additional sum of $71.25, being the accountant's commissions credited in the account in respect to the real estate. With these modifications the balance shown in the account was distributed. This balance was insufficient to pay the general legacy to Clara S. Phalm (the executrix) in full, and nothing remained to be distributed under the residuary clause of the will. Exceptions to this adjudication were filed on behalf of the said Homer S. Apple, and the questions raised thereby relate to the sale of this real estate.

Exceptant contends that the conduct of executrix was fraudulent, and that either she should be surcharged with the difference between the fair market value of the real estate and the amount accounted for in the account, or that the conveyance to Benjamin B. Kready should be set aside and the premises resold.

Section 16(*k*) of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §567, provides as follows:

"Whenever any orphans' court, having jurisdiction under this section to decree a sale or mortgage of real

---

[1] The words "account is filed" were subsequently crossed out by Geib.

estate, shall issue its order to any executor or administrator to sell or mortgage such real estate, and shall, in any case within its jurisdiction, *give authority to any executor or administrator to bid at such sale,* and shall confirm the sale to such fiduciary, or shall authorize the making of such mortgage to any executor or administrator, the said court may make an order directing its clerk to execute a deed or mortgage, as the case may be, for said real estate, to such purchaser or mortgagee, who shall give security and shall account for the amount of said purchase-money or mortgage-money in the settlement of his accounts to said court." (Italics supplied.)

This section of the act of assembly relates only to sales of real estate of a decedent for the payment of debts, but it clearly implies that although the legislature did not prescribe the details of the practice to be followed by a fiduciary who wishes to buy real estate from his trust for his personal benefit, nevertheless, it intended that in all such cases a fiduciary should first obtain permission to make the purchase from the court having jurisdiction of the trust in accordance with the usual practice in equity.

Rule XXVI of the Orphans' Court of Lancaster County, promulgated February 6, 1902, and at present in force, provides as follows:

"Section 1. No executor, administrator, trustee, or other person acting in a fiduciary capacity shall purchase any property he may offer in that character, nor shall any such sale be confirmed by the Court, unless such person desiring to bid on any such property may have applied to and may have received permission from the Court; and the granting of such permission shall be publicly read with the conditions of sale, and a copy of the same publicly posted at the time and place of the sale."

The A. L. I. Restatement of Trusts, sec. 170, relating to the duty of loyalty by a trustee to the beneficiary, in subsection (e) provides as follows:

"(e) *Sale to a third person.* A sale to a third person is voidable if made with an understanding between the third person and the trustee that the third person should reconvey the property to the trustee or hold it for him. If the trustee sells to a third person for the purpose of repurchasing the property from the third person, although at the time he has no understanding with the third person as to the repurchase, he commits a breach of trust, and if he subsequently reacquires the property he can be compelled to hold it subject to the trust".

It is clear that the law frowns on purchases of trust property by a trustee in his individual capacity, and that in Lancaster County a method of permitting such sales in exceptional instances is provided.

In support of his exceptions to the account exceptant called two expert witnesses, Joseph G. Forney and John C. Rebman, who testified that they viewed the premises from the outside and placed a valuation thereon of $4,500. An examination of these witnesses as to their ability as experts disclosed that both of them had been in the real estate business in the City of Lancaster for many years, that they have had wide experience in the selling of real estate in the City of Lancaster and elsewhere, but that, with the exception of one public sale at which Mr. Rebman acted as auctioneer several years ago, they have not bought or sold any real estate in the Borough of Manheim for 10 years or more.

To rebut the evidence of these witnesses the accountant called three witnesses, one of whom was the bidder, George Seabold, mentioned above. Mr. Seabold testified that the public sale was a fair sale, that he was present, having learned of the sale by the poster which was fastened to the premises, that he bid $2,850 for the premises and that in his opinion $2,855 was a full and fair value for the premises at the time of the sale. Monroe Hostetter testified that he lived in Manheim "some twenty years" and at present "right across the street from" the real es-

tate in question, that he very frequently attended sales of real estate in Manheim, that he is more or less familiar with the value of properties on South Charlotte Street, and that $2,855 was a fair price for this property. Joseph Wickenheiser testified that he lived at 137 South Charlotte Street, about the third house south of the Apple property, that he owns real estate in Manheim, and that this property was sold for the real fair price.

In addition, according to the testimony of all the witnesses called who attended the sale, including the auctioneer, the sale was as well attended as most real estate sales in the Borough of Manheim. There were several outside bidders present. The sale was conducted in a proper fashion without haste. Every one was given a full and complete opportunity to bid, and the price obtained was the most that could have been obtained at a public sale. Taking into consideration all the testimony, it appears that the witnesses who live in the Borough of Manheim have a much more intimate knowledge of the value of real estate there and more weight must be given to their evidence in arriving at a fair value of these premises than to the evidence of the two real estate dealers from Lancaster.

Undoubtedly the conduct of executrix was highly improper, and she should be surcharged with any difference between the fair market value of the premises in question and the amount accounted for in her account. According to her testimony, the amount her agent was authorized to bid at the sale was $2,900. If a third party had bid more than this amount, there is nothing in the testimony to indicate that he would not have become the purchaser. The court, therefore, fixes the sum of $2,900 as the fair market value of said premises and surcharges the accountant the additional sum of $45.

An examination of the account indicates that the accountant, in addition to the commissions in the real estate account which were surcharged in the present adjudica-

tion, also claimed commissions on the corpus of the personal property of $52.44, and commissions on the income of $8.03. A fiduciary who is unfaithful to the trust imposed on him will not be permitted to charge commissions against the trust estate: Istocin's Estate, 126 Pa. Superior Ct. 158. Accordingly, executrix is surcharged in these amounts.

The contention of exceptant that a resale of the premises should be ordered cannot be upheld because exceptant failed to produce the bond of a prospective purchaser guaranteeing to bid at such a resale a sum sufficiently in excess of the amount accounted for, to pay all of the costs of such resale, and to leave a reasonable profit for the estate. In the absence of such a guaranty the costs of a resale might fall upon the estate. This court will not place such a burden upon the estate where substantial justice between the parties can be achieved otherwise.