## Goeltz Estate

*J. Boyd Landis,* for accountant.

*John D. Faller, Jr.,* and *Hermas L. Weary,* for creditors.

SHUGHART, P. J., September 14, 1951.—The matter before the court is the disposition of exceptions to the original and amended reports of the auditor appointed to pass upon exceptions to the first and final account filed by Isabel L. Goeltz, executrix of the last will and testament of Robert Lindsay Goeltz. The executrix is the widow of testator. From the account it appeared that the estate was insolvent and the exceptions were taken to it by creditors who did not receive their claims in full.

In his reports the auditor surcharged the accountant for certain credits taken in the account and for certain items not included as charges therein. Exceptions to these surcharges were taken by the accountant. Exceptions were also filed to the auditor's reports on behalf of the creditors.

At the time of his death testator and his wife, the accountant, were the owners of a farm as tenants by

the entireties. The farming was, however, conducted as a business by testator alone. Shortly after his death, which occurred on September 8, 1948, letters testamentary were issued on his estate to the accountant. Thereafter an inventory of the personal property was made. One of the appraisers testified that the appraisement was made October 11, 1948; the affidavit thereon was dated November 15, 1948, and it was filed March 17, 1949. The executrix continued the farming operation from testator's death until February 3, 1949, when she sold the farm (which belonged to her as the surviving tenant by the entireties) together with the livestock and equipment to one McCoy. This transaction involved a contract for the sale of the real estate for the sum of $23,000, and a bill of sale for the livestock and machinery for the price of $7,000.

The bill of sale described the property, inter alia, as being "all of the livestock and farming equipment being presently located on the farm of Isabel L. Goeltz. . . . All items are more particularly identified as being the items included in the inventory in the Estate of Robert Lindsay Goeltz. . . . It is understood that *three calves have been sold from the livestock* . . . and are not included in this Bill of Sale, and also that the feed and crops identified in the inventory may not be in the same quantities as listed in the inventory." (Italics supplied.)

The accountant did not charge herself with any proceeds for the sale of the three calves excepted in the bill of sale above and the auditor placed a surcharge upon her in the amount of $90 for this omission. This surcharge is the basis of her first exception. It must be dismissed. The inventory does not contain any reference to any calves. but it must be recognized that such could easily have come into existence between the date of the inventory and the sale several months later. The person best in position to know the amount

of livestock and the normal additions thereto was the accountant, since she was at all times in possession thereof. Her declaration relative thereto in her own bill of sale is not overcome nor explained by her indefinite testimony at the audit that she had no recollection of any calves. The value of $30 for each calf, placed by the auditor, is warranted by the testimony of the witness McCoy.

The subject matter of the accountant's second exception will be subsequently discussed in connection with the exception filed by the creditors.

The accountant's third exception deals with the auditor's surcharge in the amount of $505.52, being the amount of real estate taxes levied for the years 1947 and 1948 on the farm owned by testator and the accountant, by the entireties, which were paid with funds from the estate. These taxes were all levied and due for payment before decedent's death.

Improvements on the real estate in addition to the usual farm buildings consisted of a tenant house occupied by the man engaged by testator to do the farming and his family, and the main dwelling occupied by testator and his family. The portion of the taxes assessed against the part of the real estate actually utilized in farming was as much an expense incident to that operation as were any of the other expenses of the farming operation. The income from the farm was used by testator to support his family, just as was any other income he had and the expenses necessary to produce it were properly charged against his estate. That the taxes were not paid during his life, when they were due, does not alter the situation, because that equally pertained to many of the other claims.

The portion of taxes not assessed against land and improvements actually used in the farming were assessed against the house used as a home, which testator was obliged to furnish to his wife and family. Es-

pecially in view of the fact that the testimony discloses no basis for the apportionment of the taxes assessed, between the farm and the dwelling, we cannot conclude that this part of the tax was improperly paid as a charge against the estate.

We are aware of the decisions holding that a wife taking title to real estate by the entireties is not entitled to have a mortgage indebtedness contracted for its purchase discharged out of the personal assets of her husband's estate: Cunningham v. Cunningham, 158 Md. 372, 67 A. L. R. 1181; Rodeniser's Estate, 52 York 62; Black's Estate, 37 D. & C. 480. On the other hand, in Ballantyne Estate, 1 Fid. Rep. 445, a widow was allowed a claim for one half of the principal and interest on a mortgage secured on real estate owned by her and decedent as tenants by the entireties.

Principally because of the nature of the use to which this real estate was put and because taxes constitute a necessary expense in the farming operation, we do not believe these cases to be controlling here. This exception must therefore be sustained and the surcharge removed. . . .

The auditor found the value of the livestock and farm equipment to be $7,646.30, instead of the $7,000 with which the accountant charged herself in the account, and surcharged her in the amount of $646.30. An exception to the surcharge was taken by the accountant and the creditors excepted on the ground that the surcharge should have been greater.

Although there was a bill of sale for the livestock and equipment for $7,000, and a contract for the sale of the real estate for $23,000, it is clear from the testimony that the negotiations not only with McCoy, the purchaser, but with other prospective purchasers were on the basis of one lump sum for both the realty and personalty. McCoy, who was her witness, testified that

the division of the purchase price of $30,000 into $23,-000 for the real estate and $7,000 for the personalty was not made until the day the parties met to execute the formal agreements after negotiations had been completed. The testimony leaves no doubt that the method of disposition of the personal assets selected, involved a commingling or combination of the assets of the estate with the personal assets of the executrix. It is very apparent that an excessive value placed on the real estate would result in a reduction in the return received for the property of the estate and vice versa. The executrix was therefore personally interested not only in the sale but in the division of the proceeds.

The result of what occurred was so similar to the situation where a fiduciary purchases property of the estate for himself, as to make the rules of law enunciated in those cases controlling here. Where the personal interests of the fiduciary conflict with those of the estate he must adopt the course benefitting the estate: Herman's Estate, 90 Pa. Superior Ct. 512. An executor cannot use his power for his own private benefits and he cannot directly or indirectly become a purchaser at his own sale: Tanner's Estate, 218 Pa. 361; Istocin's Estate, 126 Pa. Superior Ct. 158, 165.

An executor who has improperly disposed of the assets of an estate has been held chargeable with the amount such property would have brought had it been properly converted: Buck's Estate, 185 Pa. 57. Since the present executrix failed to expose the property to public sale as is the custom, but sold both that property and real estate of her own as a unit, we believe she is likewise chargeable with the fair value thereof, regardless of the value assigned to it in the transaction.

In the inventory the livestock and farm equipment was listed at $6,639, and the price obtained therefor was $7,000. Counsel for the accountant argues that

since the two appraisers (both amply qualified) and McCoy, the purchaser, testified that $7,000 represented a fair price for the chattels, the court should likewise so find.

Although the competency and integrity of the appraisers was not questioned and we believe properly so, there was testimony that one of them had in 1946 participated in an appraisement of the chattels on the farm which fixed the value thereon of $10,435. As a result of this appraisement a chattel mortgage was placed on these goods, by the banking institution with which he was connected, for $7,500. While this change in value was somewhat explained, the appraiser admitted that in estates appraising his practice was to keep the values at market value or a little under. At best, appraisals are only prima facie evidence of value and are not conclusive under circumstances such as here prevail: Seidman's Estate, 261 Pa. 540; Kalbfell's Estate, 184 Pa. 25. Although the accountant attempted to show that she relied upon the advice of the appraiser on numerous matters, he testified that he did not approve of the sale for $7,000, and, in fact, knew nothing of it.

McCoy was called by the accountant as a witness as to the value of the property purchased. The sale to him was made on February 3, 1949. On March 21, 1949, he exposed some of the items purchased by him from the accountant at public sale. At this sale the goods previously belonging to the estate sold for $7,-618.80. The sales expenses amounted to $250. He testified that he repaired some of the machinery and clipped the cows for the sale, but it appears that this expense was included in the $250 sale costs. He also testified that he spent $150 to repair the tractor before it was sold.

McCoy further testified that certain items listed in the inventory for a total of $365 were not sold at

the sale and that $300 worth of corn was retained and disposed of later. He also stated that there were approximately 150 bushels of barley subsequently sold which, from the testimony of the witness Farner we find to be of a total value of $200.

From the testimony of the witness McCoy, offered by the accountant, it appears that the net proceeds of the sale after deduction of sale costs of $250 and tractor repairs of $150 were $7,218.80. This figure, together with articles retained, valued at $365, and corn and barley subsequently sold for $300 and $200, respectively, places the total value of the farm equipment and livestock at $8,083.80. This is the amount we believe the accountant should have charged as a debit and she is therefore surcharged in the amount of $1,083.80.

We have considered the testimony offered by the creditors attempting to show that the estate sustained a loss because the executrix did not sell the livestock and equipment in the fall of 1948 rather than in February 1949, because of a decline in prices. We cannot, however, find that any substantial loss resulted from this delay. Perhaps, upon application of the hindsight test, there was some loss but we cannot find gross negligence in failing to foresee that result. It is entirely possible that had the executrix sold the chattels at public sale, as McCoy did, there would have been little diminution in the value. In any event, the goods were sold well within a year of the grant of letters and that is ordinarily sufficient: Merkel's Estate, 131 Pa. 584; Istocin's Estate, 126 Pa. Superior Ct. 158.

Likewise we feel that the testimony offered by the creditors tending to show a percentage-wise decline in prices between the fall of 1948 and February 1949 was entirely too speculative to form the basis of values for the purpose of surcharge.

We concur with the auditor's view that there has been insufficient evidence of gross neglect on the part of the executrix, such as to warrant a forfeiture of her commission, especially since she has been charged for what we find from the evidence to be the full value of the goods sold.

In conformity to the foregoing discussion we reach the following

*Conclusions of Law*

1. Except as otherwise indicated in the following conclusions of law, the findings of fact and conclusions of law set forth by the auditor in his original and amended reports are affirmed and adopted by the court.

2. The accountant's exception relative to the surcharge by the auditor for calves unaccounted for is dismissed, and the surcharge of $90 therefor is sustained.

3. The accountant's exception to the surcharge for taxes assessed against the farm for the years 1947 and 1948 and paid by the accountant is sustained, and the surcharge therefor in the amount of $505.52 is removed.

4. The accountant's exception to the surcharge for camera equipment not accounted for by the accountant is dismissed, and the surcharge therefor in the amount of $253.76 is sustained.

5. The accountant's exception to the surcharge for the enlarger is dismissed, and the surcharge in the amount of $80 therefor is sustained.

6. The accountant's exception to the surcharge for two hogs not accounted for by the accountant is dismissed, and the surcharge in the amount of $60 therefor is sustained.

7. The accountant's exception to the surcharge for $646.30 on account of the sale of the farm equipment and livestock is dismissed.

8. Creditors' exception to the failure to surcharge the accountant in an amount in excess of $646.30 is sustained in part, and the accountant is surcharged therefor in the amount of $1,083.80.

9. The accountant, Isabel L. Goeltz, now Gilso, is surcharged on account of her administration of the estate in the total amount of $1,977.86, being $410.30 for surcharges imposed by the auditor to which no exceptions were taken, and $1,567.56 on account of surcharges as set forth in the preceding conclusions of law.

10. The accountant is directed to pay the costs of the audit and also to pay the preferred creditors as the same are set forth in the schedules of distributions filed by the auditor in his original and amended reports.

11. The total balance for distribution among the general creditors of the estate is the sum of $5,219.65. This consists of the balance shown in the auditor's amended report of $3,241.79, which remained after the payment of the costs of audit and the preferred creditors, together with the total surcharges set forth in conclusion of law no. 9 of $1,977.86.

12. The identity of the general creditors and the amount of the claim of each are as set forth in the original and amended reports of the auditor, and the accountant is directed to pay unto each his pro rata share of the balance for that purpose.

And now, September 14, 1951, the exceptions to the reports of the auditor in the above-captioned estate are disposed of as indicated in the foregoing opinion and conclusions of law. The accountant is directed to pay the costs of the audit and the preferred creditors, as set forth in conclusion of law no. 10; and it is directed that the attorney for the accountant prepare a schedule of distribution distributing the balance of $5,219.65 among the creditors entitled thereto, as shown by the

original and amended reports of the auditor, and to file a schedule of distribution therefor, which schedule, when filed, shall become a part of this opinion.