## Waltersdorff Estate

*Horace G. Ports*, for petitioner.
*Herbert B. Cohen*, for respondent.

GROSS, P. J., June 29, 1955.—Cletus E. Waltersdorf, decedent, died February 3, 1953, and in his last will and testament, executed April 26, 1951, he appointed Mary H. Waltersdorf, his wife by a second marriage, Thomas E. Waltersdorf, an only child, a son by his first marriage, and Hanover Trust Company, of Hanover, the executors thereof, and to whom letters testamentary were duly granted.

Pursuant to the requirements of section 401 (*a*) of the Fiduciaries Act of 1949, the executors caused to be prepared an inventory and appraisement of the assets of the estate of said decedent.

Mary H. Waltersdorf, one of the executors, refused to join in the filing of said inventory and appraisement, for the alleged reason that there was omitted therefrom a certificate for 699 shares of common stock of Waltersdorf Furniture Company, Inc.

Thomas E. Waltersdorf, one of the executors, filed his petition in this court, upon which a citation was issued against her to show cause why an order compelling her to join in said inventory and appraisement should not be granted.

Hanover Trust Company, of Hanover, the third executor, remains neutral in this proceeding and states of record its willingness to abide by the decision of the court in the matter.

An answer was filed to the petition by Mary H. Waltersdorf and the matter proceeded to a hearing, when some testimony was taken with reference to the merits of the controversy.

It appears from the petition, the answer and the testimony that the Waltersdorf Furniture Company, Inc., formerly a partnership between decedent and his brother, John A. Woltersdorf, was incorporated in the year 1946. The capital structure of said corporation consisted of 1,400 shares of common stock, of which

699 shares were issued to Cletus E. Waltersdorf, decedent, 699 shares to John A. Waltersdorf, decedent's brother, and two shares to Paul A. Husson, the secretary and treasurer of the company.

On April 2, 1952, about 10 months before his death, Cletus E. Waltersdorf, decedent, surrendered his certificate of common stock for 699 shares, and requested and directed the corporation to issue a new certificate of stock therefor in the names of "CLETUS E. WALTERSDORF AND OR THOMAS E. WALTERSDORF, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON". For Federal estate tax purposes these 699 shares of stock are valued at $165,663.

It is the contention of Thomas E. Waltersdorf, the son of decedent, that the form in which this certificate of stock now stands constitutes a joint tenancy with right of survivorship and that, therefore, at his father's death, he became the sole owner of the stock, and that it is not an asset of the estate of his father.

On the other hand, Mary H. Waltersdorf, his stepmother, contends that the surrounding circumstances, proven at the hearing, which existed at the time said last named certificate of stock, omitted from the prepared inventory and appraisement, was issued, when taken in connection with the provisions of the last will and testament of decedent, clearly proves that this stock, notwithstanding the form of the certificate, must necessarily be an asset of this estate in order to effect an equal distribution of decedent's estate between her and the son as was intended by decedent in his will.

The basic controversy, therefore, is whether Thomas E. Waltersdorf owns this stock or whether it is an asset of his father's estate.

The position taken by Mary H. Waltersdorf for her

refusal to join in the filing of an inventory and appraisement is, in effect, the same as exceptions filed to an inventory and appraisement in which it is alleged certain assets of an estate have been omitted.

Upon reviewing the authorities on the subject, and without passing upon the question as to who is the real owner of the stock, we are convinced that the prayer of the petition should be granted and that Mary H. Waltersdorf should be directed to join in the filing of said inventory and appraisement, but without prejudice to her right to raise the question of ownership at the audit of the executors' accounts.

In Rogers Estate, 379 Pa. 494, Richard G. Rogers, the son of Sue G. Rogers, and executor of her estate, filed his inventory and appraisement. Doctor Rogers, the surviving husband of Sue G. Rogers, elected to take against her will, and filed exceptions to the executor's inventory and appraisement upon the ground that the executor should have charged himself with the sum of $11,000, which the exceptant alleges the son received from his mother with directions from her to place it in her safe deposit box, to which the son had access. Apparently this the son failed to do.

The son filed an answer to the exceptions, in which he denied that he owed the estate of his mother the sum of $11,000, and demanded a jury trial. After a hearing, the Orphans' Court of Armstrong County granted an issue to be tried by a jury. From this order of the court, the son appealed. The Supreme Court reversed the lower court and held:

"In the settlement of a decedent's estate disputed title to property should not be determined upon exceptions to an inventory and appraisement which happens not to include the property claimed on behalf of the estate. The function and object of an inventory and appraisement in a decedent's estate is to fix *pre-*

*sumptively* the existence of property in the possession of the fiduciary and the value thereof. This is only *prima facie* evidence of ownership and value. Such listing does not affect the true ownership and value: *Stewart's Estate*, 137 Pa. 175 . . .; *Moore's Estate* (No. 1), 211 Pa. 338 . . .; *Herman's Estate*, 226 Pa. 543 . . .; *Fleming's Estate*, 10 Dist. 259 (Penrose, J.). The question of ownership is of interest to creditors, federal and state taxing authorities, and others. Such title, therefore, should not be finally determined until after an audit, with due statutory notice, and the determination by the Orphans' Court whether or not a substantial issue of fact exists. It is true that in *Leadenham's Estate*, 289 Pa. 216 . . ., a citation on the fiduciary to file a supplemental inventory embracing the disputed property was impliedly approved as a procedure for determining the question of title. Nonetheless, the proper procedure is as we have hereinabove indicated and is, therefore, to be followed.

"The executor, appellant, should be required to file an account. At the audit a claim for surcharge may then be presented against the fiduciary for the amount of money which belonged to decedent at the time of her decease and alleged to be in his possession. . . .

"If at the audit of the account it should appear that the appellant holds this fund merely as custodian for the estate, the court will direct that it be placed in the fiduciary's account for distribution. Should, however, the son deny ever receiving such money or, having received it, claim that he disbursed it in accordance with testatrix's direction or should the son claim it as a gift, the court shall proceed to ascertain if a substantial dispute exists. If it does, then the executor, as an individual, has the undoubted right to demand and secure the award of an issue to be tried by a jury. Even in the absence of demand, where a

substantial dispute exists, it is the duty of the court to award an issue: *Cutler's Estate*, 225 Pa. 167 . . .; *Williams' Estate*, 236 Pa. 259 . . .; *Schroeder Estate*, 352 Pa. 170 . . .; *Colison Estate*, 356 Pa. 531 . . .; *Perri v. Chiavaroli*, 370 Pa. 495. . . .

"Under the Act of August 10, 1951, P. L. 1163, Art. VII, Sec. 745(b), 20 PS 2080.745(b), which codified the prior law, it is provided: *'When a substantial dispute of fact shall arise* concerning the decedent's title to property, real or personal, any party in interest shall be entitled to a trial of this fact by a jury.'"

We have given no consideration to the evidence adduced at the hearing as to the possibility of the transfer of this stock having been made by decedent in contemplation of death, because that question is not before the court in this proceeding.

On the authority which we have quoted at considerable length, we enter the following

And now, to wit, June 29, 1955, the prayer of the petition is granted and Mary H. Waltersdorf, a coexecutor in this estate, is ordered and directed to join with her coexecutors in the filing of an inventory and appraisement in this estate within the next 20 days, without prejudice, however, to her to raise the question of the real ownership of the stock in dispute at the audit of the accounts of the executors.

And, in order to expedite the adjudication of the questions involved, we order and direct the executors to file an account of their administration of this estate on or before August 31, 1955.

The costs of this proceeding to be paid by the executors as costs of the administration of this estate.