## Heller et al., Exrs., *v.* Fabel, Exrx., Appellant.

*Appeals—Evidence—Inferences—Binding instructions.*

1. In considering whether or not a party was entitled to binding instructions in his favor, all the oral evidence and inferences which can properly be drawn therefrom, if favorable to the other party, must be taken as true, and all unfavorable to him must be rejected.

*Payment—Possession of check—Filling out check—Presumption —Course of business.*

2. The possession of a check, filled out for a given amount, to the order of the person who has it in his possession, is presumptive evidence that it was given by the maker to the payee, in payment of a debt, or for cash received at the time the check was given.

3. This presumption arises from the ordinary course of business, and does not apply where the ordinary course of business leads to no such conclusion.

4. Where a check which has been signed, but is otherwise in blank, is used in the purchase of securities, and, in the presence of the holder, is filled out by the vendor to his own use for their purchase price, the presumption is that it was properly filled out to the party and for the amount and purpose intended by the maker, that is, for the purchase of those securities for him.

*Bonds—Possession—Presumption of ownership.*

5. Registered bonds accompanied by a power of attorney signed by the registered owner, directing their transfer to a specified person, will be presumed to belong to that person, though found in the possession of a third party, if there is no writing to show any interest of the third party therein.

*Appeals—Judgment on verdict—Case properly submitted—Subsequent erroneous reason given by judge not ground for reversal.*

6. If, under the evidence taken at the trial, a case was properly submitted to the jury, a judgment on the verdict will not be reversed for erroneous reasons thereafter given by the trial judge.

*Evidence — Witness — Discovery of incompetency of witness — Motion to strike out.*

7. Where, without objection as to his competency, a witness has been examined and cross-examined at length, his testimony will not be subsequently stricken out, unless a motion to that effect is made as soon as it becomes known that the witness was not competent to testify in the case.

Argued April 12, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 63, Jan. T., 1927, by defendant, from judgment of C. P. Monroe Co., Feb. T., 1925, No. 27, on verdict for plaintiffs, in case of Stewart Heller et al., executors of Susanna H. Fabel, deceased, v. Ida S. Fabel, executrix of John Fabel, deceased.   Affirmed.

Trespass for conversion. Before SHULL, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiffs for $11,674.85. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*W. B. Eilenberger,* with him *C. H. Rhodes* and *Harvey Huffman,* for appellant.—This case raises the direct question whether a cause of action now trespass, formerly trover and conversion, can be maintained under our present Practice Act by pleadings setting up merely the facts required to be set up under the common law practice and with proofs, at best, which would hardly be sufficient to sustain a verdict under common law procedure: Clark v. Lindsay, 7 Pa. Superior Ct. 43; Zullinger v. Grebe, 72 Pa. Superior Ct. 209; McLean v. Schoenhut Co., 225 Pa. 100; National Bank v. Block Co., 233 Pa. 421.

The possession of a check signed in blank and placed in the hands of a second party by the maker, does not

import the existence of a condition from which uniformly may be drawn the conclusion that the check is to be used for the benefit of the maker: Gettysburg Nat. Bank v. Kuhns, 62 Pa. 88; Lowrey v. Robinson, 141 Pa. 189; Ritchie v. Trust Co., 189 Pa. 410.

Plaintiff will not be allowed to plead any action in such a way as to shut off defendant from making a defense to the facts that are submitted of which he had no notice by the terms of the pleading: National Bank v. Block Co., 233 Pa. 421; Caster v. McShaffery, 48 Pa. 437; Weitzel v. Marr, 46 Pa. 463.

*F. B. Holmes,* with him *A. Mitchell Palmer* and *C. Raymond Bensinger,* for appellees.—The Practice Act of 1887 made no change in the substance of this action. It simply changed the name by consolidating it with two others into an action denominated trespass.

The time and manner of the conversion are immaterial: Stout v. Rassel, 2 Yeates 338; Little v. Fairchild, 195 Pa. 614; Winlack v. Geist, 107 Pa. 297; Sellers v. Shue, 12 Pa. Dist. R. 361.

This is a case which demands a full and satisfactory rebuttal if defendant expects to avoid the irresistible conclusion that the bonds so purchased belonged to Susanna Fabel: Epstein v. Ratkosky, 283 Pa. 168; Mullison's Est., 68 Pa. 212; Kellam v. Kellam, 94 Pa. 225.

At the time when Stewart Heller was called as a witness, the jury would have been amply justified in finding from the evidence already in the case that John Fabel was merely the agent of Susanna Fabel for the purchase of the bonds. If they so found, Stewart Heller was unquestionably a competent witness and the court could not have decided this question against plaintiff in advance: Ely v. Hager, 3 Pa. 154; Snyder v. Bull, 17 Pa. 54; Smith v. Hay, 152 Pa. 377; Sargeant v. Ins. Co., 189 Pa. 341.

An objection to competency comes too late after a witness has been sworn: Howser v. Com., 51 Pa. 332; Ely

v. Hager, 3 Pa. 154; Snyder v. Bull, 17 Pa. 54; Sargeant v. Ins. Co., 189 Pa. 341; Patterson v. Wallace, 44 Pa. 88.

OPINION BY MR. JUSTICE SIMPSON, May 16, 1927:

Defendant appeals from the judgment entered on a verdict in favor of plaintiffs, in a suit to recover the value of six $1,000 coupon bonds of the Fourth Liberty Loan and two $500 registered bonds of the Stroudsburg Creamery Company, which were in defendant's possession, and which she refused to deliver to plaintiffs on demand.

The form of action was one which, prior to our procedure acts, would have been called trover and conversion, and plaintiffs' counsel, in preparing the statement of claim, followed the old practice and averred, inter alia, that plaintiffs had "casually lost the said several bonds...... [which] came to the possession of the said defendant by finding." Many of the exceptions taken at the trial, and of the assignments of error in this court, refer to plaintiffs' failure to prove, or offer to prove, those averments; but the trial judge's rulings were unobjectionable since the statement of claim also averred, and the evidence established, that plaintiffs' decedent was the owner of the bonds, that plaintiffs were entitled to their possession, and that, although they were in defendant's possession, she refused to deliver them despite repeated demands that she should do so. An averment and proof of these facts was sufficient, and all else in the statement of claim became surplusage: Sellers v. Shue, 12 Pa. Dist. R. 361, per LANDIS, P. J.

The most important assignments are those which complain that the court below erred in not giving binding instructions for defendant, and in not entering judgment in his favor non obstante veredicto. In considering them, all the oral evidence and inferences which can properly be drawn therefrom, if favorable to plaintiffs' contentions, must be taken as true, and all unfavorable

thereto must be rejected: Fluke v. Lang, 283 Pa. 54. Considered thus the relevant evidence is as follows:

Defendant's decedent was a stockholder in and a director of the Stroudsburg National Bank, and had a safe deposit box in its vaults. Neither plaintiffs' decedent, nor her husband,—who was a brother of defendant's decedent,—had such a box, but they had a joint deposit account in the bank. Defendant's decedent sometimes acted for them in financial matters. After his death, the bonds were found in his safe deposit box, and were claimed to belong to his estate solely because of this fact. No evidence was offered to show that they were given to or purchased by him; on the other hand, there was ample that they belonged to plaintiffs' decedent, as we will now proceed to show.

The bank was one of the government's agents in selling the bonds of the Fourth Liberty Loan, in collecting the price thereof, and in delivering the bonds to the purchasers. Some six months before the purchase of the bonds here in litigation, defendant's decedent had consulted with the cashier of the bank in regard to investing the money of plaintiffs' decedent, then on deposit in the bank, in some of the Liberty Loans. Prior to their actual purchase, he had obtained from plaintiffs' decedent, a check signed by her and drawn upon the joint account above referred to, but not otherwise filled up. He took it to the cashier of the bank, who filled it up to the order of the bank, for the purchase price of the bonds, and gave to defendant's decedent a receipt for the payment, which was surrendered when the latter received the bonds and placed them in his safe deposit box. The officials of the bank, with whom he dealt in the transaction, testified that the only payment for the bonds, was by plaintiffs' decedent's check, in the way stated. Subsequently, defendant's decedent said that the bonds were bought with the money of plaintiffs' decedent, and belonged to her. Under these facts, the trial judge would have committed serious error, if he had not submitted

the case to the jury, to determine to whom the bonds belonged; telling them, in a charge free from substantial error, so far as appellant was concerned, that the burden was on plaintiffs to establish to their satisfaction, by the fair preponderance of the evidence, that, despite the presumption in defendant's favor, growing out of the place where the bonds were found, they nevertheless actually belonged to plaintiffs' decedent.

The case as to the creamery bonds was even clearer. They were registered in the name of one Fred G. Fabel, who was called as a witness. He testified that he gave them to plaintiffs' decedent and her husband, in part payment of a debt he owed them; and, at the same time, executed a power of attorney which specified that he had sold the bonds to them, and provided that a transfer should be made to them. The bonds, with the power of attorney, were found presumably in the safe deposit box, still standing in the name of the witness. Of course, they could not be utilized by defendant's decedent, but could only be transferred to plaintiff's decedent and her husband; and the latter having died, they passed by survivorship to her. Under such circumstances, the presumption is that the bonds belonged to plaintiffs' decedent, and not to defendant's (Cumming's Est., 153 Pa. 397, 401), and the trial judge should have so told the jury.

It was strenuously argued that, so far as concerned the Liberty Loan bonds, there was an additional presumption in favor of defendant, growing out of the fact that her decedent paid for them with a check he had in his possession. Under the admitted facts here, the presumption is otherwise. It is undoubtedly true that the possession of a check, filled out for a given amount, to the order of a person who has it in his possession, is presumptive evidence that it was given by the maker to the payee, in payment of a debt, or for cash received at the time: Ritchie v. Deposit & Trust Co. of Pittsburgh, 189 Pa. 410. This presumption arises from the ordinary course of business (5 R. C. L. 486), and has no

applicability where, as here, the ordinary course of business leads to no such conclusion. When the check in this case was filled out, it was done by the bank's cashier, to the order of the bank, and admittedly was given for the purchase of the Liberty Loan bonds. The presumption is that it was properly filled out to the party intended by the maker, for the amount and purpose intended by her; that is, for the purchase of these bonds for her. Hence, the presumption is that the bonds belonged to her, since she paid for them, and the only counter-presumption, and this a weak one, under the circumstances here appearing, grows out of their possession at a later date, and not out of the former possession of the unfilled-up check.

It is urged also that the court below erred, in its opinion denying appellant's motion for judgment non obstante veredicto, in taking judicial notice of a record of the orphans' court. This would have been error, if it had been said on the trial of the case, and might have affected the result: Steel v. Levy, 282 Pa. 338. We do not reverse a judgment on a verdict, however, for erroneous reasons given after the trial, if, as developed thereat, the case was properly submitted to the jury.

The only other point necessary to be considered, relates to the competency of Stewart Heller as a witness, though no such objection was made when he was called. He was examined and cross-examined at length upon a single point, viz., a conversation with defendant's decedent, in which the latter admitted he had purchased the Liberty Loan bonds for plaintiffs' decedent, and held them for her. Admittedly, it was known all the time that the witness was one of the plaintiffs, was a brother of plaintiffs' decedent and was an executor under her will. Defendant was, therefore, estopped to object to his competency on any of these grounds. At the end of a long cross-examination, defendant asserted that the witness "would be benefited if [he] won this action," and, when an objection was made to the statement, asked

him if he was a legatee under her will. When this was answered affirmatively, defendant, for the first time, objected to the witness's competency, and moved to strike out the testimony already given by the witness. It was not averred that the answer of the witness was defendant's first knowledge that he was such a legatee, and what preceded it indicated that the fact was probably otherwise. The motion was overruled, and that action is now assigned as error.

Without deciding whether or not the witness should have been held competent, if the question had been raised at the right time and in the right way, it suffices to say that where, as here, a witness has been examined and cross-examined at length, it is not error to refuse to strike out his testimony thereafter, unless it appears that the motion was made as soon as it became known that he was not competent to testify in the case: Lowrey v. Robinson, 141 Pa. 189; Forster v. Rogers Bros., 247 Pa. 54, 63. It did not so appear in the present case.

We have read and considered all the twenty-three assignments of error, but what we have said above disposes of all which are of sufficient importance to be referred to in this opinion. Perhaps we should add that, notwithstanding the skill and persistency with which appellant's case was presented, the strong impression remains that any other judgment than that appealed from would have been a denial of justice.

The judgment of the court below is affirmed.