J-S08014-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KENNETH KULIKOWSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAURA MINOT | : | |
| | : | |
| Appellant | : | No. 2568 EDA 2025 |

Appeal from the Order Entered September 3, 2025
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2025-61460

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED JUNE 3, 2026**

Laura Minot ("Mother") appeals from the September 3, 2025 order which granted the petition filed by Kenneth Kulikowski ("Father") (collectively with Mother, "Parents"); the trial court entered a one-year protection from abuse ("PFA") order against Mother and in favor of Father and Parents' two children, K.K., born in August of 2011, and R.K., born in September of 2014 (collectively, "the Children"). After careful review, we affirm.

We gather the relevant factual and procedural history of this matter from the certified record. Aside from their shared parentage of the Children and their separation, the record does not disclose significant details about Parents' relationship. Mother resides in Caln Township, Chester County, Pennsylvania with E.T. ("Maternal Grandmother") and J.G. ("Maternal Great-Grandmother"). Father resides in Bucks County, Pennsylvania. Prior to the

underlying PFA action, Parents were involved in child custody and support litigation related to the Children. The custody order in effect at the time of these proceedings awarded Father primary physical custody of the Children, while granting Mother partial physical custody every other weekend. As best we can discern, the existing custody order awarded Parents shared legal custody.

On August 25, 2025, Father filed the subject petition alleging that Mother had sexually abused K.K. *See* Petition for PFA Order, 8/25/25. Specifically, the petition alleged, in relevant part, as follows:

> The morning of August 7, 2025, K.K. told his caretaker and brother that Mother shaved his penis. As a result, Father called K.K.'s therapist at which time the therapist advised him to call the local child protective services agency as soon as possible. On August 9, 2025, [Bucks County Child Protective Services ("BCCPS")] interviewed K.K.
>
> On August 10, 2025, a supervisor at [BCCPS] called Father and advised that under no circumstances was he to turn the Children over to Mother.
>
> On August 11, 2025, Father was contacted by the Caln Township Police Department who advised him to bring K.K. to the station for a child criminal forensic interview. This occurred on August 14, 2025. Subsequent to the interview, Father was advised that on multiple occasions K.K. had to be accompanied by Mother and/or Maternal Grandmother in the tub. They bathed him and used a massage device on his scrotum and bottom.
>
> Father was then contacted on August 22, 2025, by Chester County Child Protective Services that he was to immediately file a protection from abuse petition.
>
> There is an open criminal investigation under the Caln Township Police Department.

Petition for PFA Order, 8/25/25, at ¶ 11 (cleaned up).[1]

The trial court held an *ex parte* hearing regarding Father's PFA petition on the date of filing but declined to issue a temporary PFA order. The court held an evidentiary hearing on September 3, 2025. Therein, Parents were each present and represented by counsel. Father testified on his own behalf and presented the testimony of K.K. Mother testified on her own behalf and adduced testimony from Maternal Grandmother and Maternal Great-Grandmother.

The trial court aptly summarized the testimony, as follows:

At the hearing, K.K., the fourteen-year-old autistic son of [Parents] testified that Mother showed him how to use an electronic shaver around his penis and then he shaved that area himself. He further testified that Mother sometimes "touch[es] [him] around [his] backside with her finger" and "sometimes" put her finger in him. He also testified that he sleeps in the same bed with Mother and she "sometimes" touches his penis. N.T., 9/3/25, at 5, 7-22.

Father testified that K.K. provided that same factual account to Father, K.K.'s therapist, [Caln Township Police Department], and [BCCYS]. K.K. told Father at the present hearing that he "was very nervous. He was uncomfortable with [Mother] staring at him." N.T., 9/3/25, at 23-27.

. . .

Mother explained, in March, K.K. came to her and stated that his hair was getting long and he wanted [to] take care of it. . . . Mother "informed [Father] . . . that [she] had purchased

_____

[1] Father filed a separate PFA petition against Maternal Grandmother on behalf of himself and the Children, which was heard along with his petition against Mother at the subject hearing. The court ultimately dismissed Father's petition against Maternal Grandmother. **See** N.T., 9/3/25, at 70.

- 3 -

these clippers and [told him that he was] . . . more than welcome to open [the clippers] and show K.K. how to use them. [Father's] exact words to her were, ["]No, that's all you." . . . That weekend, she "uncomfortably had to show [her] 14-year-old son how to use [the clippers]." . . . She stated that K.K. used the clippers and was content thereafter.

Mother testified that she has only slept in the same bed with K.K. one time in the last two years because he asked her to do so. Mother further testified that she never bathes K.K. but will sit in the bathroom and talk to him when he asks her to do so. She denied ever touching K.K.'s penis or putting her finger in his anus. Finally, Mother testified that K.K. is honest to a fault, straightforward, and agreed, "If he says something happened, it's pretty likely that it actually did happen." N.T., 9/3/25, at 28-48.

Maternal Grandmother testified that neither she nor Mother stay in the bathroom with K.K. when he bathes, but they wait right outside because K.K. wants them near him. . . . N.T., 9/3/25, at 51-59.

Maternal Great-Grandmother testified that she saw Mother trying to help K.K. shave his hair, but Mother was practically halfway out of the bathroom helping and giving instructions to K.K. on how to shave his pubic hair. Mother was not looking at him. N.T., 9/3/25, at 60-63.

Trial Court Opinion, 11/25/25, at 5-7 (cleaned up; brackets and parentheses in original; footnote omitted).

During the September 3, 2025 hearing, we note that K.K. testified without objection, including extensive cross-examination by Mother's counsel. *See* N.T., 9/3/25, at 8-22. Immediately after K.K.'s testimony concluded, the court called a luncheon recess. *See id.* at 22. After the proceedings resumed following the break, Mother's counsel presented a motion to strike K.K.'s testimony based upon a purported lack of "competency." *Id.* at 23. The trial court denied the request. *See id.*

- 4 -

On the same day as the hearing, the trial court entered a final, one-year PFA order against Mother on behalf of Father and the Children. *See* Final PFA Order, 9/3/25. This order superseded the existing custody order and revoked Mother's partial physical custody award. *See id.* at 3 (unpaginated). The final PFA order granted Mother phone and/or video call contact with the Children from 6:30 p.m. to 7:00 p.m. every day. *See id.*

On October 1, 2025, Mother timely filed a notice of appeal which did not include a children's fast track designation. It follows that Mother did not contemporaneously file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On October 6, 2025, the trial court ordered Mother to file a concise statement within twenty-one days pursuant to Rule 1925(b). On November 25, 2025, the trial court filed a Rule 1925(a) opinion, wherein it stated that the Mother had not filed a concise statement.[2] *See* Trial Court Opinion, 11/25/25, at 2-3.

_____

[2] Mother's concise statement does not appear on the trial court docket or anywhere else in the certified record. As a result, on November 25, 2025, this Court ordered Mother to file a concise statement no later than December 5, 2025. On December 1, 2025, Mother filed a concise statement with this Court that was discernably time-stamped as being filed with the Prothonotary of Bucks County at 10:50 a.m. on October 23, 2025. *See* Rule 1925 Statement Received, 12/1/25, at 2-3 (unpaginated). Despite the absence of this document from the trial court record and docket, the time stamp on Mother's concise statement unambiguously indicates that it was filed within the time limit set by the trial court's October 6, 2025 order. Thus, we do not dismiss or quash Mother's appeal. *Cf. J.P. v. S.P.*, 991 A.2d 904, 908 (Pa. Super. 2010) (holding that the appellant waived all issues by failing to file a Rule 1925(b) statement when directed by the trial court).

- 5 -

On appeal, Mother raises the following issues for our review:

1. Did the trial court err in finding that K.K. was competent to testify?

2. Did the trial court err in finding that abuse occurred as defined in the PFA Act where the evidence was so inconsistent, unreliable, and contradictory on the essential issues as to fail to provide a sufficient basis from which to enter a final order for one year?

3. Did the trial court err in finding the evidence was sufficient to sustain the verdict?[3]

Mother's Brief at 6 (cleaned up; reordered for ease of disposition).

Our applicable standard of review is well-established:

In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, [enough] to tip a scale slightly.

When a claim is presented on appeal that the evidence was not sufficient to support an order of protection of abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

_____

[3] Although listed as an issue, we discern that Mother has abandoned her third claim for relief by failing to mention or develop it in her appellate brief. *See* Mother's Brief at 1-19; *see also King v. Stefenelli*, 862 A.2d 666, 670 (Pa. Super. 2004) (holding that where a litigant lists an issue but their "brief contains no corresponding argument[,]" the claim is waived); Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued . . . followed by such discussion and citation of authorities as are deemed pertinent.").

***E.K. v. J.R.A.***, 237 A.3d 509, 519 (Pa. Super. 2020) (citations and quotation marks omitted). Additionally, the weight "to be accorded to [a witness's] testimony is within the exclusive province of the trial court as the fact finder." ***S.G. v. R.G.***, 233 A.3d 903, 907 (Pa. Super. 2020) (citations omitted).

In Mother's first issue, she argues that the trial court abused its discretion by denying her post-testimonial objection to exclude K.K.'s testimony on the grounds of alleged incompetency. ***See*** Mother's Brief at 9-15. Specifically, Mother maintains that K.K. was incompetent due to suffering from a "mental condition or immaturity" that prevented him from being able to "sufficiently understand the duty to tell the truth." ***Id.*** at 11 (citing Pa.R.E. 601(b)(4)). She also claims that K.K.'s testimony was "tainted" by the ongoing custody dispute between Parents. ***Id.*** at 12-13. In his response, Father argues that Mother waived any argument concerning K.K.'s competency because her motion to strike was made after K.K. had already completed his testimony and after an extended court recess. ***See*** Father's Brief at 11, 15. Following our careful review, we must agree with Father.

As a general matter, the Pennsylvania Rules of Evidence provide that a party may only "claim error" with respect to the admission of evidence if they made a "specific" and "timely objection [or] motion to strike." Pa.R.E. 103(a)(1)(A)-(B). With respect to competency, every person is generally considered "competent to be a witness except as otherwise provided by statute or in these rules." Pa.R.E. 601(a). With specific reference to Mother's

arguments, "[a] person is incompetent to testify if the court finds that because of a mental condition or immaturity[,] . . . the person does not sufficiently understand the duty to tell the truth."  Pa.R.E. 601(b)(4).

As a threshold matter, however, this Court has held that an objection to the admission of testimony that is only entered **after** its completion is untimely and fails to preserve the issue for appellate review.  **See Allied Elec. Supply Co. v. Roberts**, 797 A.2d 362, 364-65 (Pa. Super. 2002); **see also Commonwealth v. Tucker**, 143 A.3d 955, 962-63 (Pa. Super. 2016).  With specific reference to the instant case, our case law further provides that an "objection as to competency of a witness to testify should be made **before testimony is given if the incompetency is known**, and if not, should be made as soon as it becomes apparent."  **Turner v. Valley Hous. Dev. Corp.**, 972 A.2d 531, 535 (Pa. Super. 2009) (citation omitted; emphasis added); **see also Heller v. Fabel**, 138 A. 217, 220 (Pa. 1927) ("[I]t suffices to say that where, as here, a witness has been examined and cross-examined at length, it is not error to refuse to strike out his testimony thereafter, unless it appears that the motion was made as soon as it became known that he was not competent to testify[.]").

Here, Mother contends that fourteen-year-old K.K. was incompetent to testify due to his alleged immaturity and the fact that he has been diagnosed with a mental condition, namely, autism.  **See** Mother's Brief at 12 (averring that K.K. was incompetent due to being "[a]utistic" and "very immature for

his age"). She also claims that K.K. is incompetent due to "taint" from the ongoing custody proceedings. *Id.* at 12-13. Importantly, Mother is K.K.'s parent and, thus, has a unique familiarity concerning his nature. The factual bases that Mother alleges regarding K.K.'s incompetency were known to her well before K.K.'s testimony due to their familial relationship. Despite prior knowledge of K.K.'s mental condition, alleged immaturity, and alleged taint, Mother did not challenge K.K.'s competency until long after his testimony was completed and the court had taken an extended recess. *See* N.T., 9/3/25, at 22-23. Therefore, we deem Mother's motion to strike for incompetency to be untimely. *See Allied Elec.*, 797 A.2d at 364-65; *Tucker*, 143 A.3d at 962-63; *Turner*, 972 A.2d at 535; *Heller*, 138 A. at 220. Thus, we conclude that Mother's first issue is waived. *See* Pa.R.E. 103(a)(1)(A).

Turning to Mother's second issue, she argues that the trial court abused its discretion with respect to its weight and credibility determinations concerning K.K.'s testimony. *See* Mother's Brief at 9, 16-19. Specifically, Mother asserts that K.K. was not credible due to his "inconsistent" responses during his testimony and, therefore, she argues that his testimony cannot sufficiently support the finding of abuse. *Id.* at 19 ("[T]he allegations of abuse are disturbingly vague and critically inconsistent.").

The PFA Act, 23 Pa.C.S.A. §§ 6101-6122, governs this matter. In relevant part, the PFA Act defines "abuse" to include, *inter alia*, the physical and sexual abuse of minor children by "family or household members[.]" 23

Pa.C.S.A. § 6102(a)(4). We reiterate that a petitioner in a PFA proceeding is only required to demonstrate that the abuse alleged occurred by a "preponderance of the evidence." *E.K.*, 237 A.3d at 519.

In support of her arguments, Mother has cited a number of holdings concerning determinations in criminal matters. *See Commonwealth v. Karkaria*, 625 A.2d 1167, 1171-72 (Pa. 1993) (reversing criminal conviction based upon finding that the evidence of record was "so unreliable and contradictory that is uncapable of supporting a verdict of guilty"); *Commonwealth v. Bennett*, 303 A.2d 220, 220-21 (Pa. Super. 1973) (same). Initially, we find these holdings to be of limited value given the jurisprudential tension between the evidentiary burdens in PFA cases and those that apply to criminal prosecutions. As noted above, a PFA petitioner is "not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence." *E.K.*, 237 A.3d at 519.

Furthermore, we observe no merit in Mother's contention regarding the alleged unreliability of K.K.'s testimony. In its Rule 1925(a) opinion and in finding that Mother was a perpetrator of abuse, the trial court clearly signaled that it credited K.K.'s testimony. *See* Trial Court Opinion, 11/25/25, at 5-8. We emphasize that the trial court was empowered "to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re R.A.M.N.*, 230 A.3d 423, 427 (Pa. Super. 2020) (citation omitted).

The record clearly belies Mother's argument that K.K.'s testimony was so unreliable or inconsistent as to warrant its complete disregard. K.K. provided the following testimony with respect to the sexual abuse that Mother perpetrated against him:

Q: Was there ever a time where your mom touched your backside?

A: Sometimes.

. . .

Q: Did she every touch you around your backside with her finger?

A: Sometimes.

. . .

Q: Did she ever put her finger inside you?

A: Not all the time, but sometimes.

. . .

Q: When you're sleeping in the same bed with your mom, does she ever touch your penis?

A: Sometimes. Not all the time.

N.T., 9/3/25, at 11-12, 15. In addition, Mother herself testified that K.K. is "fairly honest" and "straightforward," and acknowledged that "if he says something happened, it's pretty likely that it actually did happen[.]" *Id.* at 48. Further, Father corroborated K.K.'s claims and reported that K.K.'s in-court testimony mirrored what K.K. had told him. *See id.* at 24. Father

further stated that K.K. told the same version of events to his therapist, the Caln Township Police Department, and BCCYS. *See id.* at 24-25.

Based upon the foregoing, we discern no abuse of discretion in the trial court's findings. To the extent that Mother seeks to overturn the credibility and weight-based determinations of the trial court, she is not entitled to relief. *See E.K.*, 237 A.3d at 519; *see also S.G.*, 233 A.3d at 907. Accordingly, we affirm the September 3, 2025 PFA order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/3/2026